# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHNNY C. GAGHINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.  05-CV-37-SAJ |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

### OPINION AND ORDER[1]

Pursuant to 42 U.S.C. § 405(g), Plaintiff appeals the decision of the Commissioner denying Social Security benefits.[2] Plaintiff asserts that the Commissioner erred because (1) the ALJ failed to perform a proper evaluation at Step Three of the sequential evaluation; (2) the ALJ failed to properly evaluate the opinion of Plaintiff's treating physician; (3) the ALJ failed to conduct a proper credibility analysis; and (4) the ALJ failed to perform a proper evaluation at Step Five of the sequential evaluation process.  For the reasons discussed below, the Court **reverses and remands** the Commissioner's decision for further proceedings consistent with this opinion.

---

[1]   This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

[2]   Administrative Law Judge Lantz McClain (hereafter "ALJ") concluded that Plaintiff was not disabled by decision dated May 28, 2004.  [R. at 22 - 23].  Plaintiff appealed the decision by the ALJ to the Appeals Council. The Appeals Council declined Plaintiff's request for review on December 2, 2004.  [R. at 5].

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff completed a pain questionnaire on March 5, 2002. [R. at 160]. Plaintiff wrote that he required assistance with dressing in the morning, that he walked with a cane, that it was painful to climb stairs, and that he was limited in the amount of weight he could carry. [R. at 160]. Plaintiff noted that he could no longer play any sport activities with his children and was unable to cook due to problems with lifting and balance. [R. at 160]. Plaintiff indicated that he experiences pain in his right leg, left wrist, spine, and right hip. [R. at 160]. Plaintiff noted that he had experienced pain in his right leg since 1979, in his left wrist since 1995, and in his spine and right hip since 1995. [R. at 160]. Plaintiff noted that he sometimes fell, and that his most recent fall had occurred on March 2, 2002. [R. at 160]. Plaintiff noted that his pain prevented him from doing numerous things, and that sitting and standing were painful. [R. at 161].

Plaintiff completed a developmental questionnaire which was received on November 18, 2002, by the Social Security Administration. [R. at 177]. Plaintiff wrote that his doctor would not permit him to work or retrain for a different job. Plaintiff noted that he has difficulty standing for any length of time, and has difficulty sleeping. [R. at 177]. Plaintiff noted that he was unstable and frequently fell. [R. at 178]. Plaintiff also wrote that he was mentally depressed. [R. at 178].

Plaintiff had surgery on his left wrist on August 21, 1996. [R. at 182]. There were no complications reported. [R. at 183].

Plaintiff had a "follow-up evaluation" on November 5, 1996, with David K. Wong, M.D. [R. at 186]. Plaintiff reported that his wrist had hurt over the weekend. [R. at 186]. The doctor noted that he believed it unlikely that Plaintiff could return to his past work as

a heat and air repairman, and suggested that Plaintiff be retrained for less strenuous work. [R. at 186].

Plaintiff had a "follow-up evaluation" on December 5, 1996. [R. at 184]. The doctor noted that Plaintiff's injury stemmed from a slip and fall which occurred in March 1994. [R. at 184]. Plaintiff's primary complaint in May 1996 had been of severe and debilitating pain related to his left wrist. [R. at 184]. Plaintiff had minimal improvement with physical therapy, and in August 1996 had surgery. [R. at 184]. Plaintiff reported being better compared to his preoperative state. [R. at 184]. Plaintiff's surgery was well-healed. [R. at 185]. Plaintiff's grip strength on the left side was 30 pounds as compared to 100 pounds on the right side. [R. at 185]. Plaintiff's pinch grip was ten pounds for the left as compared to 23 pounds for the right. Range-of-motion for the wrist was extension 65 degrees, flexion 50 degrees, ulnar deviation 25 degrees, radial deviation 15 degrees, supination 85 degrees and pronation 85 degrees. [R. at 185]. Plaintiff as found to have achieved maximum medical benefit. Plaintiff was described as not pain free. The doctor determined that Plaintiff had a 25% permanent partial impairment to his left wrist. [R. at 185]. The doctor noted that he did not believe it realistic for Plaintiff to return to heat and air work. "However, my opinion is that he can return to work at a level which is no more than what he would typically do in caring for himself with his activities of daily living. Therefore, I feel he may return to work with a restriction of lifting no more than 5 pounds with the left hand and unlimited for the right hand. He should avoid using vibrating tools. He may do very light repetitive activities as long as they are not assembly line or production-based work. I feel if he does not have transferable skills, then he should be retrained." [R. at 185].

Plaintiff was examined by Kenneth R. Trinidad, D.O., on December 9, 1996. [R. at 187]. He concluded that Plaintiff has a 42% impairment to his left hand as contributed to by injuries to his left wrist. [R. at 188]. The doctor noted this would include persistent pain, stiffness, and crepitance in the wrist, range-of-motion restrictions and weakness in wrist strength and grip strength. [R. at 188]. The doctor concluded that Plaintiff's condition was stable and that maximum medical recovery had been achieved. The doctor stated that Plaintiff was temporarily totally disabled from September 1994 until December 5, 1996, with the exception of one month in July 1995. [R. at 188]. The doctor believed that Plaintiff would be unable to return to his position as a heat and air repair person, and that Plaintiff would require vocational retraining for a light duty position. [R. at 188].

On May 11, 2001, Plaintiff complained of right knee pain and instability. Plaintiff indicated he was previously a firefighter in the Air Force and while fighting a fire he was blown backward by a backdraft and his right leg folded. Plaintiff's leg was trapped under an oxygen tank. [R. at 226].

Wallace B. Love, M.D., wrote a letter on Plaintiff's behalf dated June 29, 2001. [R. at 209]. He noted that Plaintiff suffered a fall in 1995 and 2000 due to instability of his right knee. [R. at 209]. The doctor noted that due to his problems Plaintiff was unable to work or attend heating and air-conditioning school. [R. at 209, 267].

An MRI dated July 30, 2001, was interpreted as indicating degenerative disc disease at L1-L2. [R. at 265]. Plaintiff was issued a cane and given physical therapy to train Plaintiff to use the cane. [R. at 265].

Reports dated October 9, 2001, indicated Plaintiff was taking more Lortabs than he should due to the pain and was unable to sleep. [R. at 221]. Plaintiff reported pain in his neck, hip, and increased pain with sitting. [R. at 222].

On December 13, 2001, Plaintiff's knee was evaluated. Plaintiff was noted as having degenerative changes on his x-ray and having signs and symptoms consistent with a meniscal tear. [R. at 219]. On December 19, 2001, Plaintiff continued to complain of right hip pain and instability in his knee. Plaintiff also complained that the Lortabs were not effective at controlling his pain. [R. at 240].

Plaintiff was evaluated by the Department of Veteran Affairs on January 4, 2002. [R. at 210]. Plaintiff was evaluated as having degenerative joint disease, with right knee as 10 percent disabling. [R. at 213]. Plaintiff's gait was abnormal with a slow shuffling step. [R. at 213]. Plaintiff had a right knee injury evaluated as 20% disabling. Plaintiff also was found as having a right hip and left leg disability. [R. at 214].

On February 1, 2002, Plaintiff's doctor noted that Plaintiff was experiencing depression. [R. at 339]. Plaintiff was noted as having a current GAF of 50, with the highest GAF over the prior year reported as 50. [R. at 339]. Plaintiff's wife reported, to Plaintiff's doctor, that Plaintiff had episodes of explosive behavior. [R. at 345].

On March 11, 2002, Plaintiff reported falling ten days previously while walking in his garage. Plaintiff noted that his ribs hit a cabinet and his leg was throbbing. Plaintiff stated he blacked out. [R. at 231]. Plaintiff was seen at Hillcrest ER the following day and was told that he bruised his ribs and that his colon was "swollen." Plaintiff requested a different brace to provide more support. [R. at 232].

On March 25, 2002, Plaintiff reported drinking as much as one six pack with severe pain. [R. at 195]. Plaintiff reported increased pain. [R. at 195].

In June 2002, Plaintiff's wife called and stated that Plaintiff had become increasingly violent since he had learned that he had Hepatitis C. [R. at 346].

Plaintiff was admitted November 18, 2002, and discharged November 18, 2002. [R. at 373, 370]. The doctor noted that Plaintiff had increasing mood swings and anger outbursts. [R. at 373]. Plaintiff's wife and four children moved out of the house in October due to his outbursts. [R. at 373]. Plaintiff was described as requiring a cane to move, and was issued a cane because Plaintiff indicated that his cane had disappeared at some point during the ambulance ride. [R. at 379]. Plaintiff also had an overdose on his prescribed medications. [R. at 390]. Plaintiff was admitted due to the overdose. [R. at 394]. Notes also indicate that Plaintiff's wife had a protective order against him, and that protective services had ordered that Plaintiff could not see his children absent supervision because of his abusive behavior. [R. at 391]. Plaintiff reported that his wife stated that he threatened to kill her and the children, but that Plaintiff had no recollection of the event. [R. at 398]. The reviewer noted that Plaintiff appeared to be in a lot of pain because he could not stay in any one position and periodically had to get up to walk. [R. at 393].

A Physical Residual Functional Capacity Assessment form was completed on April 18, 2002, by Thurma Fiegel, M.D. [R. at 321]. She noted that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for six hours in an eight hour day, and sit for six hours in an eight hour day. [R. at 322]. A second Residual Physical Functional Capacity Assessment form was completed May 7, 2002, with identical restrictions marked. [R. at 329].

A hearing was held before the ALJ on March 23, 2004. [R. at 57]. ALJ noted that Plaintiff had a date last insured of September 30, 2000. [R. at 60]. Plaintiff's attorney stated that he was not "at this time" arguing that Plaintiff met a Listing, and agreed that the case should be decided at Step Five. [R. at 61].

Plaintiff testified that he was born August 31, 1959, and was 44 years old at the time of the hearing before the ALJ. [R. at 62]. Plaintiff graduated from high school and attended about one and one-half years of college. [R. at 63]. Plaintiff experienced difficulties attending college. Plaintiff stated that he was placed on increased pain medications to enable Plaintiff to sit through his classes. [R. at 63]. Plaintiff also stated he had difficulty with concentration due to his medications. [R. at 64].

Plaintiff stated that in 1979 he was a fire fighter in the United States Air Force and was involved in a jet field explosion on a flight line which blew him into a block wall. [R. at 64]. Plaintiff noted that it injured his right knee, hip, and spine. [R. at 64]. Plaintiff stated that he was in the hospital for three months and continued physical therapy for about one year. [R. at 65]. Plaintiff received a medical discharge from the service. [R. at 65]. Plaintiff last worked in March 2000 as a painter at a paint and body shop. [R. at 65]. Plaintiff indicated that work as a painter was exhausting and he had a difficult time performing the physical demands of the job. [R. at 66].

According to Plaintiff, Plaintiff has been unable to work since 2000 because of an injury to his left wrist, left elbow, right leg, right hip, and his spine. Plaintiff's most problematic impairment has been his left hand and his right leg. [R. at 67]. Plaintiff stated that if he does not completely concentrate on his leg he can turn wrong and the leg pops out of its socket. [R. at 68]. Plaintiff also experiences medium to low back pain. [R. at 68].

Plaintiff's spine is jammed into a S-shape. [R. at 69]. Plaintiff testified that his level of pain is at a seven. [R. at 69].

Plaintiff stated that he takes Naproxen for swelling in his joints, and methylcarbonal Soma to relax his muscles. [R. at 70]. Plaintiff testified that he takes Elavil at night to permit him to sleep, and takes a blood thinner. [R. at 70]. In 2000, Plaintiff also took Vicodin and Lortab for pain. [R. at 71]. According to Plaintiff, he sometimes drinks to help control his pain when his pain medications do not work. Plaintiff estimated he drank about three times each week. [R. at 72].

According to Plaintiff, he experiences constant pain in his right wrist. [R. at 73]. Plaintiff stated that he has had three surgeries on his right hand, and that ever since the surgeries he has been unable to lift in excess of two to five pounds. [R. at 74]. If Plaintiff uses his right arm repeatedly, his arm falls limp and he is unable to raise it. [R. at 75].

Plaintiff also stated that he has blood clots in his left leg and was, at the time of the hearing, on blood thinners to attempt to dissolve the clots. [R. at 76]. Plaintiff testified that he experiences severe headaches. Plaintiff also testified that he was diagnosed with Hepatitis C in 1989. [R. at 77]. According to Plaintiff, this causes him a great deal of fatigue. [R. at 77]. Plaintiff also stated that he had difficulty sleeping. [R. at 83].

According to Plaintiff, his doctor did not want him to drive because of all of the medications that he is taking. [R. at 85]. Plaintiff testified that his wife does all of the driving. [R. at 85]. Plaintiff experiences pain about four or five days each week. [R. at 86].

In 2000, Plaintiff believes he could walk about one-half of one block. [R. at 79]. Plaintiff noted that he frequently changes position to accommodate the way that he feels. [R. at 80]. Plaintiff believes he could lift 30 to 40 pounds with his right arm. [R. at 82].

Plaintiff stated that he had a double hernia surgery in April of 2000, and that following the surgery he was placed on a less than 20 pound lifting limit. [R. at 88].

The ALJ also noted that Plaintiff had not worked in 1996, 1997, 1998, or 1999. [R. at 88]. Plaintiff stated that he had been unable to work during that period of time. [R. at 88].

At the time of the hearing before the ALJ, Plaintiff was in prison. Plaintiff stated that he had been incarcerated since December 23, 2003. [R. at 89]. Plaintiff was also previously incarcerated in 1999 and 1985 or 1986. [R. at 90].

On June 22, 2004, Plaintiff reported falling six days previously and experiencing pain in his right knee. [R. at 13].

## II. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social security claims. *See* 20 C.F.R. § 404.1520. Disability under the Social Security Act is defined as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment
> . . . .

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only if his

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy. . . .

42 U.S.C. § 423(d)(2)(A).[3/]

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by substantial evidence. See 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo*. *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993). The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner. *Qualls v. Apfel*, 206 F.3d 1368 (10th Cir. 2000); *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational. *Williams*, 844 F.2d at 750; *Holloway v. Heckler*, 607 F. Supp. 71, 72 (D. Kan. 1985).

---

[3/] Step One requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510 and 404.1572). Step Two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. See 20 C.F.R. § 1521. If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled. If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work. A claimant is not disabled if the claimant can perform his past work. If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of his age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy. If a claimant has the RFC to perform an alternate work activity, disability benefits are denied. See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

"The finding of the Secretary[4/] as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750.  In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance.  *Perales*, 402 U.S. at 401.  Evidence is not substantial if it is overwhelmed by other evidence in the record.  *Williams*, 844 F.2d at 750.

This Court must also determine whether the Commissioner applied the correct legal standards.  *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  The Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards.  *Glass*, 43 F.3d at 1395.

### III.  ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ concluded that Plaintiff could lift or carry 10 pounds occasionally or frequently, stand or walk for at least two hours in an eight hour day and sit about six hours in an eight hour day.  Based on the testimony of a vocational expert, the ALJ concluded that Plaintiff was not disabled.

### IV.  REVIEW

One of Plaintiff's treating physician, after surgery on Plaintiff's left wrist in August of 1996, placed a lifting restriction upon Plaintiff of no lifting greater than five pounds with his left hand.  *See* Report by Central States Orthopedic ("[H]e may return to work with a

---

[4/]  Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security.  P.L. No. 103-296.  For the purpose of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner."

restriction of lifting no more than 5 pounds with the left hand and unlimited for the right hand.") [R. at 185]. The ALJ recognized this report and lifting restriction in his decision. [R. at 28].

The ALJ concluded in his RFC that Plaintiff could lift or carry ten pounds occasionally and frequently. The ALJ never discounted the opinion of Plaintiff's surgeon that Plaintiff should lift no more than five pounds with the left hand. The ALJ never otherwise addressed or dealt with the five pound lifting restriction. The ALJ does not specifically address the evidence which supports a lifting restriction of ten pounds rather than five pounds. The Court concludes that the ALJ's findings with regard to Plaintiff's RFC, that Plaintiff can lift and carry ten pounds are not supported by the record and the action must therefore be remanded.

Dated this 10th day of March 2006.

Sam A. Joyner
United States Magistrate Judge